MICHAEL E. KIRBY, Judge.
 

 | t This matter involves a disputed claim under a homeowners insurance policy for property damage that occurred during Hurricane Katrina. Plaintiffs, Patrick and Elizabeth Jouve (“plaintiffs”), appeal the parts of the April 7, 2010 trial court judgment in favor of defendant, State Farm Fire and Casualty Company (“State Farm”), which granted a motion in limine to exclude the testimony and report of plaintiffs’ expert, A. Vincent Caracei; summarily dismissed plaintiffs’ bad faith claims against State Farm; and limited plaintiffs’ recovery to the actual cash value at the time of the loss of the wind damaged part of their property. Plaintiffs also appeal from the June 80, 2010 trial court judgment that denied their motion for new trial. For the reasons that follow, we affirm.
 

 In August 2005, plaintiffs owned a house located at 3822 Octavia Street in New Orleans, which was insured under two separate insurance policies: (1) a flood insurance policy issued under the National Flood Insurance Program (“NFIP”); and, (2) a homeowners policy issued by State Farm, which provided coverage in the amount of $151,400.00 for dwelling; $15,140.00 for dwelling 12extension; $113,550.00 for contents; and actual loss sustained for loss of use. On August 29, 2005, Hurricane Katrina hit Louisiana, causing levee breaches that resulted in flooding throughout the New Orleans area. As a result, plaintiffs’ Octavia Street home sustained catastrophic damages.
 

 Plaintiffs filed a flood claim with the NFIP, and were paid $145,000.00 for building loss under the flood policy.
 
 [1]
 
 They also filed a property damage claim with State Farm under their homeowners policy. After adjusting the claim, State Farm paid plaintiffs $41,346.89 for windrelated damages under the homeowners policy.
 

 On August 26, 2006, plaintiffs filed a petition in the district court alleging that State Farm arbitrarily and capriciously failed to properly adjust their claim and pay the full amount due under their homeowners policy.
 
 [2]
 
 They allege that State
 
 *223
 
 Farm acted in bad faith and failed to timely satisfy the claim after receiving satisfactory proof of loss, entitling them to statutory penalties and attorney fees and costs pursuant to La. R.S. 22:658
 
 [3]
 
 and La. R.S. 22:1220
 
 [4]
 
 . State Farm answered the petition, and discovery commenced.
 

 |3On December 7, 2009, State Farm filed several pre-trial motions, including the three at issue in this appeal: (i) Motion in Limine to Exclude Plaintiffs’ Expert Witness A. Vincent Caracci; (ii) Motion for Partial Summary Judgment as to Plaintiffs’ Bad Faith Claims; and, (iii) Motion for Partial Summary Judgment as to Plaintiffs’ Dwelling Claims.
 

 Following a hearing, the trial court rendered a judgment on April 7, 2010, on the motions at issue as follows: (i) granted Stated Farm’s Motion in Limine to Exclude the testimony and estimate of A. Vincent Caracci; (ii) granted State Farm’s Motion for Partial Summary Judgment dismissing with prejudice plaintiffs’ bad faith claims; and, (iii) granted, in part, State Farm’s Motion for Partial Summary Judgment as to Plaintiffs’ Dwelling Claims, limiting plaintiffs’ claim to actual cash value minus depreciation
 
 [5]
 
 , and dismissing with prejudice the dwelling claim for replacement cost with full value. The April 7, 2010 judgment specifically designated the partial summary judgments as final judgments and expressly determined there was no just reason for delay pursuant to La. C.C.P. art. 1915(B)(1).
 

 On April 16, 2010, plaintiffs filed motion for new trial based on newly discovered evidence, citing La. C.C.P. art. 1972(2). Following a hearing, the trial court rendered a judgment on June 30, 2010, denying the motion. Plaintiffs timely appealed.
 
 [6]
 

 | .(Plaintiffs raised five assignments of error in this appeal.
 

 1. The trial court erred in considering the availability of a legal malpractice remedy as an alternative to a new trial, necessitating a
 
 de novo
 
 review of the trial court’s decision.
 

 2. The trial court abused its discretion by not granting plaintiffs a new trial and allowing Mr. Caracci to testify as an expert witness at trial.
 

 3. The trial court abused its discretion by not granting plaintiffs a new trial and allowing the introduction of the expert report (estimate) prepared by Mr. Caracci.
 

 4. The trial court erred in granting partial summary judgment on the
 
 *224
 
 issue of penalties and attorney fees and denying the motion for new trial on this issue.
 

 5. The trial court erred in granting partial summary judgment limiting the plaintiffs’ property damage recovery to actual cash value rather than replacement cost and denying the motion for new trial on this issue.
 

 We will consider the assignments of error by addressing the trial court’s rulings on the underlying motions and then its judgment denying the plaintiffs’ motion for new trial.
 

 Motion in Limine to Exclude Plaintiffs’ Expert Witness A. Vincent Caracci
 

 Following the Hurricane, the plaintiffs hired Mr. Caracci, owner of Gulf Coast Construction, to inspect their home for both wind and flood damage and to give them an estimate to repair the damages. Based on Mr. Caracci’s estimate, the plaintiffs claimed State Farm underpaid their wind damages by $70,000.00. The plaintiffs listed Mr. Caracci as a witness on their pre-trial witness list. After deposing Mr. Caracci, State Farm sought to exclude him from testifying as an expert, arguing that his opinion failed to meet the standards set forth in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
 
 [7]
 
 Specifically, State Farm argued that Mr. Caracci was not qualified to testify as an expert because he was not a licensed engineer, contractor or insurance adjuster. State Farm also emphasized that Mr. Caracci never prepared the actual wind and flood damage estimates on the Jouve property, but rather A. Vincent Car-acci, IV
 
 [8]
 
 , Mr. Caracci’s grandson, prepared the estimates using “Xactimate,” a computer program, while assisting his grandfather at the inspection.
 

 The Louisiana Code of Evidence allows a witness to qualify as an expert witness by knowledge, skill, experience, training or education. La. C.E. art. 702. The admissibility of expert testimony turns upon whether the trier of fact will be assisted in understanding the evidence or determining a fact in issue. Comment (a) to La. C.E. art. 702.
 

 In
 
 Cheairs v. State ex rel. Dept. of Transp. And Dev.,
 
 2003-0680, pp. 1-2 (La.12/3/03), 861 So.2d 536, 538, the Louisiana Supreme Court recognized that
 
 Dau-bert
 
 addressed only the issue of the reliability of an expert’s methodology and not whether an expert possessed the proper qualifications to testify. The Court, therefore, adopted three-part inquiry set forth in
 
 City of Tuscaloosa v. Harcros Chemicals, Inc.,
 
 158 F.3d 548 (11th Cir.1998), concluding it “provides more comprehensive guidance to district courts determining the admissibility of expert | (¡testimony.”
 
 Id.,
 
 2003-0680 at 10, 861 So.2d at 543. Thus, the admission of expert testimony is proper only if all three of the following
 
 *225
 
 guidelines are met: (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in
 
 Daubert,
 
 and (3) the testimony assists the trier of fact through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue.
 
 Id.,
 
 2003-0680 at 9, 861 So.2d at 542,
 
 citing Harcros Chemicals,
 
 158 F.3d at 562.
 

 “A trial court is accorded broad discretion in determining whether expert testimony should be admissible and who should or should not be permitted to testify as an expert.”
 
 Everhardt v. Louisiana Department of Transportation and Development,
 
 2007-0981, p. 15 (La.App. 4 Cir. 2/20/08), 978 So.2d 1036, 1048 (citations omitted). Whether an expert meets the qualifications of an expert witness and the competency of the expert witness to testify in a specialized area is within the sound discretion of the trial court.
 
 Id.
 
 A trial court’s decision to qualify an expert will not be overturned absent an abuse of discretion.
 
 Id.
 

 In support of its motion in limine, State Farm submitted the deposition testimony of Mr. Caracci, who testified that he was neither a licensed engineer nor licensed insurance adjuster. Although he referred to himself as a contractor, Mr. Caracci acknowledged that he had not held a valid contractor’s license in fifteen years. Mr. Caracci testified that he had never taken any insurance adjusting classes 17to determine wind versus flood damage, but rather relied on his past experience evaluating property damage following Hurricane Betsy in 1965 to prepare his Hurricane Katrina related estimates.
 

 Regarding the inspection of the Jouve property, Mr. Caracci recalled that his son (grandson) and Jose Terwought, a roofer, accompanied him on the inspection. According to Mr. Caracci, they walked throughout the house and his son (grandson) prepared the actual damage estimates using the Xactimate computer program. Mr. Caracci admitted that due to his poor health he was unable to complete the inspection. He acknowledged that he never inspected the attic or the roof. Mr. Carac-ci also verified that he had no knowledge of the condition of the Jouve property prior to Hurricane Katrina.
 

 Plaintiffs opposed the motion, arguing that Mr. Caracci qualified as an expert because he had extensive experience estimating property damage. They pointed out that he had been in the contracting business since 1965 and had prepared property damage estimates for both homeowners and insurance companies over the years.
 

 Following the motion hearing, the trial court concluded that Mr. Caracci did not qualify as an expert because he lacked a viable methodology for his opinion, failed to properly inspect the Jouve property, and never prepared the damage estimate at issue. After reviewing Mr. Caracci’s deposition and other evidence in the record, we cannot say the trial court abused its discretion by granting State |8Farm’s motion in limine to exclude the testimony and damage estimate of Mr. Caracci from the trial.
 

 Motion for Partial Summary Judgment as to Plaintiffs’ Bad Faith Claims
 

 Plaintiffs alleged that were entitled to penalties and attorney fees because State Farm acted in bad faith and failed to timely satisfy their claim after having received satisfactory proof of loss. Plaintiffs characterized State Farm’s failure to properly adjust their claim and pay the full amount under their homeowners policy, as
 
 *226
 
 arbitrary, capricious and without probable cause.
 

 Both La. R.S. 22:658 and La. R.S. 22:1220 provided for penalties and attorney fees for the insurer’s failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause.
 
 Sher v. Lafayette Insurance Company,
 
 2007-2441, p. 26 (La.4/8/08), 988 So.2d 186, 206. The primary difference is the time periods allowed for payment; La. R.S. 22:658(B)(1) requires payment to be made within thirty (30) days after receipt of satisfactory proof of loss while La. R.S. 22:1220(B)(5) requires payment to be made within sixty (60) days.
 
 Id.
 

 One who claims entitlement to penalties and attorney fees has the burden of proving: (1) the insurer received satisfactory proof of loss; (2) the insurer failed to pay the claim within the applicable statutory period; and, (3) the insurer’s failure to pay was arbitrary, capricious and without probable.
 
 See Louisiana Bag Company, Inc. v. Audubon Indemnity Company,
 
 2008-0453, pp. 11-12 (La.12/2/08), 999 So.2d 1104, 1112-13;
 
 Sher,
 
 2007-2441, pp. 26-27, 988 So.2d at 206.
 

 |9The phrase “ ‘arbitrary, capricious, or without probable cause,’ ... is synonymous with ‘vexatious’ [and] ‘a vexatious refusal to pay’ means unjustified, without reasonable or probable cause or excuse. Both phrases describe an insurer whose willful refusal of a claim is not based on good-faith.”
 
 Sher,
 
 2007-2441, p. 27, 988 So.2d at 206-07,
 
 quoting Reed v. State Farm Mut. Auto. Ins. Co.,
 
 2003-0107 (La.10/21/03), 857 So.2d 1012, 1020-21. When “there are substantial, reasonable and legitimate questions as to the extent of an insurer’s liability or an insured’s loss, [the insurer’s] failure to pay within the statutory time period is not arbitrary, capricious or without probable cause.”
 
 Louisiana Bag Company, Inc.,
 
 2008-0453, pp. 14-15, 999 So.2d at 1114. Whether an insurer’s action was arbitrary, capricious or without probable cause is essentially a fact issue to be determined by the trial court and not to be disturbed on appeal absent manifest error.
 
 Id.,
 
 2008-0453, p. 25, 999 So.2d at 1120.
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.
 
 Samaha v. Rau,
 
 07-1726, p. 3 (La.2/26/08), 977 So.2d 880, 882-83. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B. “Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall Lobe construed to accomplish these ends.”
 
 King v. Parish Nat’l Bank,
 
 2004-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966 A(2)). When, as in the instant case, the party bringing the motion is not the party that will bear the burden of proof at trial, “the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of
 
 *227
 
 proof at trial, there is no genuine issue of material fact.” La. C.C.P. art. 966 C(2).
 

 The evidence submitted by State Farm in support of its motion for partial summary judgment indicates that the plaintiffs notified State Farm of a loss under their homeowners policy on September 14, 2005. On September 18, 2005, State Farm paid the plaintiffs $2,500.00 for prohibited use. On October 26, 2005, Charles Bradley, a State Farm claims representative, spoke to Mrs. Jouve, who informed him that plaintiffs’ flood claim had been handled. At that time, Mr. Bradley scheduled an appointment to inspect the plaintiffs’ home for the purposes of adjusting the homeowners claim. State Farm inspected the property on November 5, 2005, and issued a check to plaintiffs on November 14, 2005, for wind damage to their home. On December 9, 2005, State Farm received a letter with enclosed documentation from Mrs. Jouve, evidencing additional prohibited use expenses incurred by Mr. Jouve during emergency evacuation. On January 10, 2006, State Farm paid plaintiffs an additional $491.35 for prohibited use.
 

 |nOn May 25, 2006, plaintiffs submitted to State Farm an estimate of $111,535.45 prepared by Mr. Caracci, reflecting the wind damage to the plaintiffs’ property. In response, State Farm arranged a joint inspection of the property with the plaintiffs’ contractor (Mr. Caracci). On June 15, 2006, a State Farm adjuster and Mr. Caracci re-inspected the property. Based on the re-inspection, State Farm paid plaintiffs an additional $35,076.72 on July 7, 2006.
 

 In August 2006, plaintiffs retained counsel to represent them in filing a suit against State Farm. On August 25, 2006, State Farm contacted plaintiffs’ counsel and scheduled yet another inspection of the property for the following day. Several hours later, plaintiffs’ counsel contacted State Farm again to cancel the scheduled re-inspection because the plaintiffs’ had sold the house. State Farm eventually reinspected the property and, on October 4, 2006, paid plaintiffs an additional $6,207.63 for wind damage.
 

 Plaintiffs also made a claim under the State Farm homeowner’s policy for damaged contents, but did not provide State Farm’s counsel with a list of the purported damaged contents until October 27, 2009, more than three years after filing suit. State Farm disputed that these items were covered losses under the policy.
 
 [9]
 

 The evidence submitted indicates State Farm timely initiated the loss adjustment of plaintiffs’ property and made an unconditional tender based on the 112fírst inspection within the statutory time period. When plaintiffs’ counsel submitted Mr. Caracci’s estimate to State Farm, State Farm arranged for a re-inspection of the property with Mr. Caracci. Based on the re-inspection, State Farm made a second timely unconditional tender.
 

 Plaintiffs offered no evidence in opposition to State Farm’s motion for partial summary judgment that shows State Farm acted arbitrarily, capriciously or without cause in adjusting their homeowners claim. Given that plaintiffs will have the burden of proof at trial, and thus far have offered no evidence of bad faith on the part of State Farm to create a genuine issue of material fact, we find no error in the trial court’s granting a partial summary judg
 
 *228
 
 ment dismissing the bad faith claims against State Farm.
 

 Motion for Partial Summary Judgment as to Plaintiffs’ Dwelling Claims
 

 Plaintiffs alleged that State Farm’s payment of $41,346.89 under the homeowners policy for wind damage to their dwelling was insufficient, in part, because Mr. Caracci’s estimate of replacement costs was higher. State Farm filed a motion for partial summary judgment arguing that plaintiffs are not entitled to replacements costs under the terms of them policy because they sold their home to a third party in 2006 in “as is” condition without effecting any repairs. Thus, State Farm contends plaintiffs are only entitled to the actual cash value as of August 28, 2005 of the damaged part of the property.
 

 |13In support of the motion for partial summary judgment on the dwelling claims, State Farm submitted a copy of plaintiffs’ homeowners policy, which provided, in pertinent part:
 

 SECTION I — LOSS SETTLEMENT
 

 Only the Loss Settlement provisions shown in the Declarations apply. We will settle covered property losses according to the following:
 

 COVERAGE A — DWELLING
 

 1. Al-Replacement Cost Loss Settlement — Similar Construction
 

 a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered in Section I — COVERAGES, COVERAGE A — DWELLING, except for wood fences, subject to the following:
 

 (1)until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;
 

 (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;
 

 (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed....
 

 |14An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in articles 2045 to 2057 of the Louisiana Civil Code.
 
 Sims v. Mulhearn Funeral Home, Inc.,
 
 2007-0054, p. 7 (La.5/22/07), 956 So.2d 583, 588-89. The responsibility of the court in interpreting insurance contracts is to determine the parties’ common intent.
 
 See,
 
 La. C.C. art. 2045;
 
 Sims,
 
 2007-0054, p. 7, 956 So.2d at 589. “The words of a contract must be given their generally prevailing meaning.” La. C.C. art. 2047. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent and courts must enforce the contract as written.
 
 See,
 
 La. C.C. art. 2046;
 
 Sims,
 
 2007-0054, p. 8, 956 So.2d at 589.
 

 It is undisputed that after Hurricane Katrina plaintiffs never repaired or replaced the dwelling before selling to it to
 
 *229
 
 a third party in 2006. Thus, under the clear and unambiguous terms of plaintiffs’ homeowners policy, plaintiffs’ recovery was limited to the actual cash value on August 28, 2005 of the independent wind damaged part of the property. Under Louisiana law, actual cash value is equal to replacement cost value less depreciation.
 
 See, e.g. Real Asset Management. Inc. v. Lloyd’s of London,
 
 61 F.3d 1223, 1228 n. 7 (5th Cir.1995).
 

 Considering the appellate standard of review for summary judgment, we find the trial court properly granted State Farm’s motion for partial summary judgment as to the plaintiffs’ dwelling claims. The April 7, 2010 judgment, however, must be amended to delete the words “minus depreciation.”
 
 See
 
 n. 5,
 
 supra.
 

 |
 
 plaintiffs
 
 ’
 
 Motion for New Trial
 

 After the trial court rendered the April 7, 2010 judgment, plaintiffs retained a new attorney who filed a written motion for new trial based on newly discovered evidence pursuant to La. C.C.P. art. 1972(2)
 
 [10]
 
 . At the June 18, 2010 hearing on the motion, plaintiffs, for the first time, also requested a new trial based on La. C.C.P. art. 1973
 
 [11]
 
 .
 

 Specifically, plaintiffs argued they are entitled to a new trial because their former attorney failed to inform them of State Farm’s pre-trial motions and the scheduled hearing date. They claimed that they were unable to present evidence in opposition to State Farm’s
 
 Daubert
 
 motion, and had they known, would have submitted the affidavits of Ms. Jouve, Donald Coco (a licensed general contractor), and Clinton Bowen (a licensed public adjuster).
 
 [12]
 
 Plaintiffs also claimed that A. Vincent Car-acci, IV, (grandson) would have appeared at the hearing to testify that he had assisted Mr. Caracci in preparing the property damage estimate.
 

 The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion.
 
 Guillory v. Lee,
 
 2009-0075, p. 38 (La.6/26/09), 16 So.3d 1104, 1131. A party seeking a new trial on the basis of newly discovered evidence must demonstrate that it has done all that is reasonable to lead to timely discovery of the evidence.
 
 McGhee v. Wallace Drennan, Inc.,
 
 2004-0950, p. 10 (La.App. 4 Cir. 4/20/05), 904 So.2d 3, 9,
 
 citing Barker v. Rust Engineering Co.,
 
 428 So.2d 391 (La.1983). Newly discovered evidence justifies [ 1fia new trial only if evidence: (1) is discovered after trial; (2) could not, with due diligence, have been discovered before or during the trial; and (3) is not merely cumulative, but instead would tend to change the result of the case.
 
 Turner v. Dameron-Pierson Co., Ltd.,
 
 95-0143, p. 2 (La.App. 4 Cir. 11/16/95), 664 So.2d 739, 740.
 

 After reviewing the aforementioned affidavits, we find no abuse of the trial court’s discretion in denying plaintiffs motion for new trial. Plaintiffs have not demonstrated any of the four criteria required for the granting of a motion for new trial based on newly discovered evidence.
 

 
 *230
 
 The submitted affidavits indicate they were generated after the initial hearing and before the hearing on the motion for new trial. However, nothing in the affidavits contain “new evidence” that was discovered after the initial hearing. In fact, the affiants reviewed Mr. Caracci’s report and provided opinions regarding the accuracy and the methodology that was used to generate the report. However, none of the information appears to be “newly discovered evidence.” The alleged new evidence is cumulative, because it includes nearly identical evidence that is included in Mr. Caracci’s deposition testimony, and would not change the result of this case. Lastly, the alleged new evidence certainly could have been discovered, with due diligence, before the trial was completed.
 

 Furthermore, we find plaintiffs have not offered any new evidence that would support the granting of a new trial on the issues of bad faith penalties and attorney fees or dwelling claim damages.
 

 Finally, we find no merit to plaintiffs’ argument that they should be granted a new trial pursuant to La. C.C.P. art. 1973, because the trial court “erred in giving weight to the availability of a malpractice remedy (against plaintiffs’ former | i7attorney) as an alternative to a new trial.”
 
 [13]
 
 Nothing in the record indicates the trial court suggested that plaintiffs pursue a legal malpractice claim against their former attorney rather than seek a new trial. In fact, at the hearing on the motion for new trial, the trial court responded to plaintiffs’ contention that their former attorney was ineffective by pointing out that the attorney had filed written oppositions to State Farm’s pre-trial motions and appeared at the hearing to argue against them. The trial court also stated that the result could have been the same even if the attorney had notified plaintiffs of the pretrial motions and the hearing.
 

 For the foregoing reasons, the April 7, 2010 judgment is amended to delete the words “minus depreciation” and, as amended, is affirmed. The June 30, 2010 judgment of the trial court is affirmed.
 

 AMENDED AND AFFIRMED
 

 [1]
 

 . Plaintiffs' received two checks from the NFIP for their building loss: the first dated December 12, 2005 in the amount of $113,761.30 and the second dated June 12, 20006 in the amount of $31, 238.70. In addition to their building loss, plaintiffs received two payments, totaling $15,000.00, for contents loss under their flood policy.
 

 [2]
 

 . In addition to State Farm, the plaintiffs sued Carl Mixon, their State Farm agent, and Michael Whittle, the State Farm claims ad
 
 *223
 
 juster, but subsequently dismissed their claims against them.
 

 [3]
 

 .The version of La. R.S. 22:658 in effect at the time that plaintiffs’ property was damaged and when the claim was filed with State Farm provided for a twenty-five percent (25%) penalty in cases involving an insurer’s failure to make payment within thirty days of receiving satisfactory written proof of loss. The statute was amended by Acts 2006, No. 813, § 1, effective August 15, 2006, to mandate a fifty percent (50%) penalty in such cases, as well as attorney fees and costs. La. R.S. 22:658 was renumbered as La. R.S. 22:1892 by Acts 2008, No. 415, § 1, effective January 1, 2009.
 

 [4]
 

 . La. R.S. 22:1220 was renumbered as La. R.S. 22:1973 by Acts 2008, No. 415, § 1, effective January 1, 2009.
 

 [5]
 

 . The April 7, 2010 judgment reads, in pertinent part, "The Motion for Partial Summary Judgment as to Plaintiffs’ claims for Dwelling is GRANTED IN PART, limiting the Plaintiffs' claim to actual cash value minus depreciation,” which State Farm concedes in its appeal brief is incorrect. The words “minus depreciation” should have been omitted.
 

 [6]
 

 . Plaintiffs also filed an application for supervisory writs on July 30, 2010, which this court denied on September 21, 2010.
 
 See Jouve v. State Farm Fire and Casualty Co.,
 
 2010-C-1104 (La.App. 4 Cir. 9/21/10)
 
 unpub.
 

 [7]
 

 . In
 
 Daubert,
 
 the U.S. Supreme Court established factors for evaluating the methodology employed by expert witnesses, including (1) the "testability” of the scientific theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (3) whether the methodology is generally accepted in the scientific community.
 
 Daubert,
 
 509 U.S. at 592-94, 113 S.Ct. 2786, 125 L.Ed.2d 469. The Louisiana Supreme Court, in
 
 State v. Foret,
 
 628 So.2d 1116, 1123 (La. 1993), characterized the
 
 Daubert
 
 factors as “observations" which provide a helpful guide for lower courts in considering the admissibility of expert testimony.
 

 [8]
 

 . A. Vincent Caracci, IV, is Mr. Caracci’s grandson by birth and son by adoption and, in some places in the record, is referred to as A. Vincent Caracci, III. Mr. Caracci also has a son, A Vincent Caracci, Jr., who worked with him in the construction business.
 

 [9]
 

 . State Farm filed a motion for partial summary judgment on plaintiffs' claims for contents and additional living expenses. In the April 7, 2010 judgment, the trial court granted the motion, in part, dismissing with prejudice the additional living expenses claim, and denied the motion, in part, as to the contents claim. The trial court's rulings on those claims are not at issue in this appeal.
 

 [10]
 

 .La. C.C.P. art. 1972(2), provides: A new trial shall be granted, upon contradictory motion of any party, in the following cases:
 

 (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
 

 [11]
 

 . La. C.C.P. art. 1973 provides, "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.”
 

 [12]
 

 . The affidavits along with the affidavit of A. Vincent Caracci, IV, were submitted with the motion for new trial.
 

 [13]
 

 . See Assignment of Error No.
 
 1, supra.