STEPHEN J. WINDHORST, Judge.
|2The parties appeal a judgment in favor of insureds, Matthew and Paula Mason, and against insurer, Bankers Specialty Insurance Company (“Bankers”),[1] in the amount of $11,320.00. The district court found that the plumbing system was covered under insureds’ homeowners’ insurance policy, that the insurer failed to prove an exclusion, and that the insurer was not arbitrary or capricious in denial of the claim. For the reasons that follow, we affirm in part, amend in part, and affirm as amended.
Facts and Procedural History
In late November and early December 2009, the Masons’ toilet in the hallway bathroom overflowed several times causing intrusion of sewerage, along with bacterial *31 contamination, into their home. The Masons hired Steve Roberts Plumbing and Heating, Inc. to examine the plumbing system and to perform the required repairs. A video inspection of the plumbing system showed a break and some sags or “bellies” in the line. The repairs required tunneling under the slab, |sreplacing and rehanging the plumbing system and refilling the tunnels. The Masons were charged $14,560.00 for the work performed.
The Masons submitted a claim to their homeowners’ insurer, Bankers, but the claim was denied on the grounds that the damage was not caused by a covered peril, or was otherwise excluded. This lawsuit was subsequently filed and cross motions for summary judgment were filed by the parties. The district court judge granted Bankers’ summary judgment and denied the Masons’ summary judgment, finding that the Masons’ homeowners’ insurance policy did not provide coverage for the damages sustained and dismissed the Masons’ lawsuit. Both parties appealed and this Court vacated the district court’s judgment in favor of Bankers and remanded the matter for further proceedings. Mason v. Bankers Ins. Group, 11-704 (La.App. 5 Cir. 3/13/12), 90 So.3d 1088. This Court found that the plumbing system was a “structure” attached to the Masons’ dwelling and was therefore a covered property under Coverage A of the homeowners’ insurance policy. However, genuine issues of material fact existed as to whether the damage to the plumbing system itself was excluded from coverage under the exclusions of the policy, and the matter was remanded to the district court for further proceedings.
Following a bench trial, the district court found that the plumbing system was covered under the homeowners’ insurance policy, and that Bankers failed to show that an exclusion from coverage applied. The district court rendered judgment in favor of the Masons and against Bankers in the amount of $11,320.00. The court further found that pursuant to La. R.S. 22:1973, Bankers had 60 days in which to properly adjust the claim and Bankers properly adjusted the claim within the requisite time period. The district court further found that Bankers was not arbitrary or capricious in denying the Masons’ claim. This appeal followed.
hCoverage
The Masons appeal contending that while the district court correctly found that the plumbing system was covered under the homeowners’ insurance policy and no exclusions precluded coverage, the court erred in excluding from coverage items that were necessary for the covered repair.
In its Answer to this appeal, Bankers contends that the trial court erred in finding coverage under the homeowners’ insurance policy in that damage to the plumbing system itself was not covered by the policy pursuant to two exclusions. Alternatively, Bankers claims that the district court did not err in excluding certain items from coverage.
Since Bankers is seeking to avoid coverage under the policy, it bears the burden of showing that an exclusion to coverage applies. Mason, supra. Bankers relies on the following two provisions in claiming that coverage is excluded under the policy:
A. Coverage A — Dwelling And Coverage B — Other Structures
1. We insure against risk of direct physical loss to property described in Coverages A and B.
2. We do not insure, however, for loss:
⅜ ⅜ ⅜
c. Caused by:
(6) Any of the following:
*32 (a) Wear and tear, marring, deterioration;
(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
[[Image here]]
Exception To c(6)
Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a:
(ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the “residence |r,premises.” This includes the cost to tear out and replace any part of a building, or other structure, on the “residence premises,” but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the “residence premises.”
We do not cover loss to the system or appliance from which this water or steam escaped.
Mr. Mason testified that the toilet repeatedly threatened to overflow or overflowed in late November 2009 and early December 2009. He testified that it had never overflowed previously. Mr. Mason testified that when it overflowed, sewerage, including solid waste, spilled onto the bathroom floor. He further testified that when the toilet overflowed, items that were on the floor were soiled. He testified that the overflow required immediate clean-up. Mr. Mason testified that the cleanup process included use of towels, cups, baggies, Clorox, mops, and any disinfectants that were available. He stated that the disinfectants were used because it was a “noxious area” and the disinfectants were needed to thoroughly clean the baseboards, floor and grout in the bathroom and the carpet in the hallway outside of the bathroom. Mr. Mason testified that he and his wife were concerned about sanitation. Additionally, the disinfectants were used to help with the smell which was “[h]orrendous.” Mr. Mason further testified that he did not have to replace any of the baseboards, cabinetry, or carpet due to the overflows. Mr. Mason testified that he could not recall a specific number of times that the toilet overflowed, but stated that it was a “recurring issue.”
Mr. Mason testified that they stopped using the bathroom and hired Steve Roberts Plumbing & Heating, Inc. to inspect the toilet and plumbing system. He testified that Mr. Roberts came out and unclogged the drain line, but it did not stay unclogged and Mr. Roberts was called back out several more times to unclog the line. After the third or fourth time, Mr. Roberts recommended a video inspection listo determine the cause of the numerous overflows. The video revealed a break and sag or “belly,” which caused a blockage in the line and the resulting overflow of the toilet. Mr. Mason testified that after Mr. Roberts replaced the plumbing system in March 2010, they did not experience any further problems with the toilet overflowing.
Mr. Mason further testified that they made a claim to Bankers to fix the plumbing in early December 2009. Mr. Mason testified that he informed Bankers that he was having problems with his toilet overflowing. Eddie Horrell, an independent adjuster for Moulton Adjusting Company, inspected the Masons’ home on December 17, 2009. Mr. Horrell was presented with Mr. Roberts’ report. After inspecting the bathroom for water damage and walking the perimeter of the house, Mr. Horrell *33 submitted a loss report to Bankers. In the loss report, Mr. Horrell found no water damage to the floor, baseboards or cabinetry. Based on a finding of no interior damage, Mr. Horrell recommended payment to the Masons in the “amount of $0.00.” Mr. Mason testified that he did not hear from Bankers until “January/mid-January” when their claim was, denied. Mr. Mason further testified that his attorney sent a letter on January 27, 2010, to Bankers stating that the damage was covered and Bankers responded with a letter February 11, 2010, again denying coverage. Mr. Mason then filed this suit alleging overflow of his toilet and resulting bacterial contamination.
Stephen Roberts was qualified as an expert in the field of “Diagnosis and Cause of Damaged Plumbing Systems.” Mr. Roberts testified that he was called out to the Masons to inspect their toilet. The first time he came out, Mr. Roberts testified that he removed the toilet and unclogged the sewer line. Mr. Roberts Ivtestified that this temporarily fixed the problem, but he was called back out for the same problem. After the third or fourth time of being called back, Mr. Roberts testified that he advised the Masons that a video inspection should be performed. The video inspection was performed and it showed a break in the line and some sags or “bellies.” Mr. Roberts testified that he recommended “tunneling” and replacing the old pipe because this was the only way to fix the repeated overflows of the toilet.
Mr. Roberts further testified that once he completed. the tunneling he found at least two breaks and some sags or “bellies” in the line, which resulted in “stoppage” which was causing the toilet to back up and - overflow of the toilet. He explained that there was “stoppage” because there was a break in the plumbing system that allowed debris to go in and collect, and that the resulting “stoppage” inhibited the gravitational flow of the water out of the system. He further testified that the sags or “bellies” also collect matter which cause the back up or overflow in the line. Mr. Roberts further testified that the cause of the breaks and sags was due to soil subsidence and gravity.[2]
Mr. Roberts additionally testified that when he took the old pipes out they were “in decent condition.” He testified that he did not find any evidence of wear and tear or deterioration of the pipes, nor did he find evidence of a mechanical breakdown.
In order to prove that the damage to the plumbing system is excluded from coverage pursuant to subsection A2c(6)(a) or (b), Bankers must prove the cause of the damage. Mason, supra. Bankers contends that the testimony of Mr. Roberts shows that the failure of the plumbing system was due to settling and age is not a | ^covered loss, and is specifically excluded from coverage due to wear and tear, and deterioration. Contrary to Bankers’ assertion, Mr. Roberts’ testimony supports a finding of coverage under the policy. The uncontradicted testimony of Mr. Roberts established that the plumbing system *34 (which is a covered property) was “in decent condition.” He specifically testified that no evidence of wear, tear, deterioration, or mechanical breakdown was found when the old pipes were examined. Bankers failed to introduce any testimony or evidence to show that the pipes sustained wear, tear, deterioration, or mechanical breakdown. Accordingly, we find that the district court did not err in finding that Bankers failed to prove the damage to the plumbing system was excluded under the policy.[3]
Additionally, we find that “Exception To c(6)” is not applicable. This subsection is only relevant if Bankers proves that the cause of the damages to the plumbing system itself is one of the listed causes in subsection A2c(6). Mason, supra. We find the record supports the finding that Bankers failed to prove the plumbing system was damaged due to wear, tear, deterioration or mechanical breakdown as provided for in subsection A2c(6).
After finding coverage, the district court found the Masons were entitled to some, but not all of the costs for repairing the plumbing system on Mr. Roberts’ invoice. After applying the $2,500.00 deductible, the district court awarded the Masons $11,320.00. The Masons contend that the reasonable costs of necessary repairs to their plumbing system are covered under policy, including the items the district court failed to include in the costs.
| ¡Coverage E — Additional Coverages, subsection 2 which provides in pertinent part:
a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage. b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against.
Because Bankers has failed to show that the damages to the plumbing system are excluded under subsection A 2 c(6), we find that the Masons are entitled to the reasonable costs of the necessary repairs to their plumbing system. We further find that the district court erred in failing to include the three charges from the invoice. Under the language of the policy, the charges for unclogging the plumbing system, performing the video inspection, and foaming the tub boxes were necessary measures to protect the covered property (■ie. the plumbing system) from further damage. Accordingly, we hereby amend the award of damages to include all charges included on the invoice, minus the deductible, and render judgment in the amount of $12,060.00.
Penalties and Attorney Fees
Finally, the Masons contend that the district court erred in denying their arbitrary and capricious claim pursuant to La. R.S. 22:1973, and further erred in failing to rule on their claim under La. R.S. 22:1892. The Masons contend that they submitted satisfactory proof of loss to Bankers on December 19, 2009 when they received Steve Roberts’ report reflecting a break and sag in the plumbing system, and that Bankers never contended that the report was not satisfactory proof of the Masons’ loss. Additionally, Bankers did not pay the claim within 30 or 60 days as required by La. R.S. 22:1892 and La. R.S. 22:1973, and did not formally deny the Masons’ claim until 54 days after Bankers received Mr. Roberts’ report 110on February 1, 2010. *35 Finally, the Masons claim that Bankers’ misrepresentation of no damage and misinterpretation of the policy was arbitrary and capricious.
The record reveals that the Masons reported their claim to Bankers in early December 2009. On December 17, 2009, Mr. Horrell inspected the Masons’ home. At that time, Mr. Horrell was provided a copy of Mr. Roberts’ report showing a break and sag in the plumbing system. Mr. Horrell submitted his report, along with Mr. Roberts’ report, to Bankers on December 19, 2009. Mr. Horrell’s report recommended payment in the amount of “$0.00” based on a finding of no interior damage. Mr. Mason testified he was notified in “January/mid-January” that his claim was denied. Mr. Mason testified that this denial was not in writing. However, Mr. Mason further testified that he then contacted his attorney who sent a letter to Bankers claiming coverage under the policy on January 27, 2010. When asked if he received a response from Bankers to this letter from his attorney, Mr. Mason testified that “I believe I received another letter from Bankers denying coverage” and the letter was dated February 11, 2010.
Bankers has consistently claimed throughout this proceeding that the plumbing system is not covered property, or is otherwise excluded under the policy. When Bankers received Mr. Roberts’ report, attached to Mr. Horrell’s report, neither report specified what caused the break and sags in the plumbing system. The cause of the break and sags was not determined until a later subsequent date. Determination of the cause of the damage was necessary to establish whether the damage was excluded. Mason, supra.
Both La. R.S. 22:1892 and La. R.S. 22:1978 provide for penalties and attorney fees for the insurer’s failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. Jouve v. State Farm Fire and Cas. Co., 10-1522 (La.App. 4 Cir. 8/17/11), 74 So.3d 220, 226, writ denied, 11-2250 (La.11/23/11), 76 So.3d 1157. The primary difference is the time periods allowed for payment. La. R.S. 22:1892B(1) requires payment to be made within 30 days after satisfactory proof of loss while La. R.S. 22:1973B(5) requires payment to be made within 60 days after satisfactory proof of loss.
When there are substantial, reasonable, and legitimate disputes as to the extent of an insurer’s liability or an insured’s loss, the insurer’s failure to pay with the statutory time period is not arbitrary, capricious, or without probable cause. Louisiana Bag Co., Inc. v. Audubon Indent,. Co., 08-0453 (La.12/2/08), 999 So.2d 1104, 1114; Maloney Cinque, L.L.C. v. Pacific Ins. Co., Ltd., 11-0787 (La.App. 4 Cir. 1/25/12), 89 So.3d 12, 25, writ denied, 12-0950 (La.7/2/12), 92 So.3d 345. This is especially true where a reasonable and legitimate question exists as to the extent and causation of a claim. Louisiana Bag Co., Inc., 999 So.2d at 1114. Whether an insurer’s action was arbitrary, capricious, or without probable cause is a question of fact to be determined by the district court and will not be disturbed on appeal absent manifest error. La Louisiane Bakery Co., Ltd. v. Lafayette Ins. Co., 09-825 (La.App. 5 Cir. 2/8/11), 61 So.3d 17, 35, writ denied, 11-0493 (La.4/25/11), 62 So.3d 95.
The question then is what constitutes a “satisfactory proof of loss.” Satisfactory proof of loss is only that which is sufficient to fully apprise the insurer of the insured’s claims. Louisiana Bag Co. Inc., 999 So.2d at 1119; La Louisiane Bakery Co., Ltd., 61 So.3d at 35.
*36 We find that substantial, reasonable, and legitimate questions existed as to the extent and causation of the damage to the plumbing system when Bankers received the reports from Mr. Horrell and Mr. Roberts. Therefore, the district court did not err in finding that Bankers was not arbitrary or capricious in denying |iathe claim. Furthermore, the district court did not err in finding that the claim was timely denied pursuant La. R.S. 22:1973.
The Masons further contend that the district court erred in failing to rule on the Masons’ claim that Bankers misrepresented and misinterpreted its own policy, failed to timely pay after satisfactory proof of loss, and was arbitrary and capricious pursuant to La. R.S. 22:1892.
When a judgment is silent as to a claim or demand that was litigated, it is presumed to be deemed denied by the district court. Cambre v. St. John the Baptist Parish, 12-590 (La.App. 5 Cir. 5/16/13), 119 So.3d 73, 81, writ denied, 13-1415 (La.10/11/13), 123 So.3d 1227. We find that the district court denied the Masons’ claim for attorney fees and penalties pursuant to La. R.S. 22:1892. The judgment does not specifically address this claim and the issue was fully litigated. Considering the evidence, we find that the district court did not err in denying the Masons’ claim pursuant to La. R.S. 22:1892.
Conclusion
For the above stated reasons, we affirm the judgment finding coverage, finding that Bankers failed to prove an exclusion, and further finding that Bankers was not arbitrary or capricious in the denial of the Masons’ claim. We further amend, and affirm as amended, the principal amount of the judgment in favor of the Masons and against Bankers in the amount of Twelve Thousand, Sixty Dollars ($12,060.00).
AFFIRMED IN PART; AMENDED IN PART; AND AFFIRMED AS AMENDED

. The petition, several subsequent pleadings, and a prior appeal, refer to the homeowners' insurer as Bankers Insurance Group or Bankers Specialty Insurance Group. However, based on the appeal before us and review of the record, the homeowners’ insurer's correct name is Bankers Specialty Insurance Company.

. Mr. Roberts specifically stated that the cause of the breaks and sags was due to "the mud, the ground, that was sitting on top the pipe, and ... the mud that was underneath the pipe, sank. So the weight of that.” He stated that the pipes had hangers on them about every five feet, but "when the mud gives way, just from gravity just ... from the settling, and then, that mud is sitting on top of that pipe, it probably doesn’t have anyplace else to go now, so ... .it snapped.” He further testified that "if you have stoppage in— somewhere, there’s weight to water ... it builds up with water, that will also incur weight to ... the plumbing system.” He testified that although the soil subsidence happened over a period of time, the break in the pipes was "sudden.”

. Bankers failed to show that soil subsidence is a "covered property” or that deterioration contemplates soil subsidence under the policy.