| LIBERTY UHACK AND | * | NO. 2024-CA-0407 |
| JOSEPH JORDAIN | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| LOWE'S HOME CENTERS, | | FOURTH CIRCUIT |
| INC., NATIONAL UNION FIRE | * | |
| INSURANCE COMPANY OF | | STATE OF LOUISIANA |
| PITTSBURGH, PA, PATRICK | * * * * * * * | |
| GARNER, NAKIA JAMES, | | |
| UNITED SERVICES | | |
| AUTOMOBILE ASSOCIATION | | |
| AND ABC INSURANCE | | |
| COMPANY | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-10169, DIVISION "L-6"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Rachael D. Johnson, Judge
Nakisha Ervin-Knott)

 **BELSOME, C.J., DISSENTS AND ASSIGNS REASONS**

Eric A. Wright
Daryl A. Gray
Bonita Wilson
James Harris
WRIGHT & GRAY
201 St. Charles Ave.
Suite 2710
New Orleans, LA 70170

COUNSEL FOR PLAINTIFF/APPELLANT

Paul J. Politz
Caroline M. Murley
TAYLOR, WELLONS, POLITZ & DUHE,
1555 Poydras Street
Suite 2000
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**APRIL 2,2025**

RDJ

NEK

Appellant, plaintiff Liberty Uhack, seeks review of the March 27, 2024 district court judgment, granting Appellee, defendant Lowe's Home Centers, LLC's ("Lowe's"), motion for summary judgment. Pursuant to our *de novo* review, we affirm.

## Facts and Procedural History

This appeal involves Ms. Uhack's personal injury claim against Lowe's. On October 11, 2020, retired New Orleans Police Department ("NOPD") Officer Patrick Garner ("Off. Garner") was working a security detail at a Lowe's store on Elysian Fields Ave. when he allegedly observed Nakia James shoplifting Lowe's merchandise. Fleeing the store by car, James drove down Elysian Fields Ave. as Off. Garner pursued James off-site. James suddenly lost control of his vehicle near Sudz Car Wash, where his car entered the premises and slammed into Ms. Uhack's vehicle as she was in the interior of the vehicle. Ms. Uhack was thrashed about the

vehicle, which she avers ultimately landed atop a concrete vacuum area of the car wash, causing her to suffer severe injuries from the impact.

In December 2020, Ms. Uhack filed suit against Lowe's, James, their respective insurers as well as Off. Garner.[1] She pleaded that Lowe's is vicariously liable for Off. Garner's actions as his off-site pursuit of James caused the accident. She later amended her petition, adding Single Source Security, doing business as Protos ("Protos"), and its insurer as defendants.

Lowe's subsequently moved for summary judgment, arguing that Off. Garner is an independent contractor, not an employee, and Lowe's exercises no operational control over him. It argued that Off. Garner was hired by Protos, which contracts with Lowe's to provide its security, as well as with the NOPD's Office of Police Secondary Employment ("OPSE") to hire retired officers, respectively.[2]

Lowe's asserts that at the time of the accident, it and Protos had in place a Master Professional Services Agreement ("MPSA"), for security services. Pursuant to the MPSA, Protos was to provide Lowe's with "the acquisition of third-party contract security services" and the Contractor Personnel Protos provided to Lowe's to perform the security services were to "serve as independent contractors either employed by a third party to Lowe's or who represent themselves and are not Lowe's employees." The MPSA outlines that there are two

---

[1] Ms. Uhack's foster father, Joseph Jordain, was also initially a plaintiff in this matter. However, his claims were later dismissed as a result of the district court's grant of Lowe's and a co-defendant insurance company's exception of no right of action on April 19, 2021.

[2] In support of its motion, Lowe's filed a memorandum attaching the following exhibits: Ms. Uhack's Petition for Damages, Exh. A; Ms. Uhack's deposition transcript, Exh. B; Ms. Uhack's First Supplemental and Amended Petition for Damages, Exh. C; Master Professional Services Agreement, Exh. D; Deposition of Lowe's representative, Luke Moeller, Exh. E; Contract Parking Lot Security Guidelines, Exh. F; Do's and Don'ts executed by Off. Garner Exh. G; Deposition transcript of Leonida DeJesus, Exh. H; and Off. Garner's deposition transcript, Exh. I. Exhibits D through G were filed under seal.

categories of Contractor Personnel: contract security personnel ("CSP"), who were obtained from other private third-party companies; and contract law enforcement personnel ("CLEP"), who were obtained from local police forces, such as the NOPD. Off. Garner was a CLEP, whose employment with Protos was secured through the OPSE.

Lowe's argued that the jurisprudence of this Court, in *Duronslet v. Walmart Stores, Inc.*, 22-0019 (La. App. 4 Cir. 7/27/22), 345 So.3d 1136, establishes that where the facts of a case show that a security guard is working as an independent contractor, pursuant to a security agreement, for a person or entity that is not exercising operational control of that guard, there is no vicarious liability. Lowe's asserts that the facts of this matter reflect that Off. Garner's actions were not controlled by Lowe's. Furthermore, Off. Garner, as an actual law enforcement officer retained by Protos, had the freedom to act as he so chose. The facts, Lowe's contends, show that Off. Garner pursued James off-site because he was compelled to do as a law enforcement officer.

Additionally, Lowe's contends it provided Protos with "Contract Parking Lot Security Guidelines ("Guidelines")," wherein CLEPs were given complete discretion as to how they were to perform their security duties, including while working when they encountered a crime in progress.

Ms. Uhack opposed the motion, asserting that genuine issues of material fact of fact exist as to whether Off. Garner was an independent contractor because reasonable persons could disagree as to the nature of his employment relationship with Lowe's.[3] She argued that the MPSA is not dispositive of the issue of whether

---

[3] The exhibits attached to Ms. Uhack's opposition are: Exh. A, "Do's and Don'ts"; Exh. B, "Contract Parking Lot Security Agreement for Contract Law Enforcement Officer (CLEP)";

3

Off. Garner was an independent contractor, rather the Court must examine the unique facts of this case. She further asserted that what is key in this matter is an examination of whether Lowe's retained the right to control Off. Garner's work.

Pointing to the Lowe's strict standards for the contract law enforcement personnel hires, including Lowe's Do's and Don'ts and Guidelines for CLEPs – both of which Off. Garner signed – Ms. Uhack asserts Lowe's maintained a right of control over Off. Garner despite his testimony that he was unaware that Lowe's had a "do not pursue" policy. Ms. Uhack averred that Off. Garner's deposition testimony combined with Lowe's Do's and Don'ts and its Guidelines for CLEPs, creates a genuine issue of material fact as to whether Lowe's exerted operational control over Off. Garner. Ms. Uhack further asserted that it was foreseeable to Lowe's that an incident such as this would occur at the Elysian Fields Ave. Lowe's location because it is allegedly a dangerous location.

Subsequent to her timely filing of her opposition to Lowe's Motion for Summary Judgment, on March 7, 2024, Ms. Uhack filed the deposition transcript of Anthony Bickley, Lowe's district asset protection manager, as a supplemental exhibit.

The following day, on March 8, 2024, the district court held a hearing on Lowe's Motion for Summary Judgment. The district court granted Lowe's motion for summary judgment at the conclusion of the hearing, reasoning:

---

Exh. C, MPSA; Exh. D, Deposition of Off. Garner; Exh. E, Deposition of Lucas John Moeller; Exh. F, Deposition of Blake Vaughn; Exh. G, Deposition of Off. Garner; Exh. H, Affidavit of Daniel B. Kennedy, Ph.D., CPP.; Exh. I, Lowe's Home Centers, Inc.'s Responses to Plaintiffs Discovery Requests; Exh. J, Defendants' *Memorandum in Support of Motion to Continue Trial* filed October 14, 2022; Exh. K, Notice of Deposition of Daniel B. Kennedy, Ph.D., CPP.; Exh. L, Email from counsel for Lowe's Home Centers, LLC dated October 21,2022 with Affidavit of Jason P. Franco; Exh. M, Deposition of Leonida Nikki DeJesus; and Exh. N, Video of Lowe's Parking Lot (October 11, 2020).

4

. . . Lowe's did not have sufficient control over the security officer in this action and the facts of this case, particularly that he [Off. Garner] left the property itself and this action occurred outside of the property. So with that, any measure of control would have been lost once he left in a vehicle.

The district court later rendered judgment on March 27, 2024, consistent with its earlier ruling. Ms. Uhack moved for a new trial, but her motion was denied. She subsequently sought supervisory review of the denial of her motion for new trial. *Uhack v. Lowe's Home Ctrs. Inc.*, unpub., 24-C-0331, (La. App. 4 Cir. 07/11/24). This Court denied writs, finding the district court did not err in granting summary judgment in favor of Lowe's as it was not vicariously liable for Off. Garner's actions, pursuant to *Duronslet v. Walmart Stores, Inc.*, 22-0019 (La. App. 4 Cir. 7/27/22), 345 So.3d 1136. Additionally, this Court further held that the district court did not abuse its discretion in denying Relator's motion for new trial. *Id.* This appeal followed. This Court, on February 4, 2025, ordered the district court to supplement the record with the written judgment denying Ms. Uhack's motion for new trial. On February 14, 2025, the district court complied with this Court's order when it submitted the signed judgment, which is dated September 20, 2024.

Ms. Uhack raises four assignments of error: 1) the district court erred by disregarding Mr. Bickley's deposition, which presented genuine issues of material fact concerning Lowe's control over Off. Garner; 2) the district court erred in granting summary judgment by ignoring evidence that Lowe's retained sufficient control over its security guards, creating liability for Off. Garner's actions while on duty; 3) the district court erred in finding that Off. Garner was acting outside the scope of employment, ignoring evidence that his actions in pursuing a shoplifter

5

were consistent with Lowe's policies; and 4) the district court erred in failing to recognize the foreseeability of injury from Lowe's allowing pursuits at its most dangerous location in the country.

Prior to discussing the assignments of error, we first address whether this Court has jurisdiction to consider the appeal.

**Jurisdiction**

The district court held a hearing on Ms. Uhack's motion for new trial on April 26, 2024. At the conclusion of the hearing on the motion for new trial, the district court denied the motion and ordered the parties to reduce the ruling to writing, as reflected in the April 26, 2024 hearing transcript. Later that day, the district court granted Ms. Uhack's Motion for Appeal.

The Appellant lodged her appeal in this Court on July 9, 2024. Two months later, in September 2024, Ms. Uhack submitted a proposed judgment for the denial of her motion for new trial to the district court, which the district court signed on September 20, 2024.

Ordinarily, an oral ruling denying a motion for new trial, and other interlocutory judgments, is sufficient for the purpose of taking an appeal. La. Code Civ. Proc. art. 1914(A). Nevertheless, as noted above, the district court ordered the parties to prepare a judgment in the instant matter. "The interlocutory judgment shall be reduced to writing if the court so orders . . . . The clerk shall mail notice of the subsequent judgment to each party." La. Code Civ. Proc. art. 1914(B).

In the instant matter, Ms. Uhack filed a devolutive appeal within 30 days of the district court's granting of Lowe's motion for summary judgment. Article 2087(D) of the Louisiana Code of Civil Procedure provides that for devolutive appeals, "[a]n order of appeal is premature if granted before the court disposes of

6

all timely filed motions for new trial or judgment notwithstanding the verdict. The order becomes effective upon the denial of such motions."

Ms. Uhack's motion for appeal was granted in April 2024, before the district court signed the judgment denying her motion for new trial in September 2024. Therefore, the district court prematurely granted Ms. Uhack's motion for appeal. However, considering the district court orally denied Ms. Uhack's motion for new trial prior to granting her motion for appeal, and further considering that the district court later executed the judgment denying the motion for new trial, we find that the prematurity of signing the order granting the appeal was cured when the district court signed the judgment denying the motion for new trial, pursuant to La. Code Civ. Proc. art. 2087(D). *See Butler v. Sudderth*, 00-1950, p. 5, n.1 (La. App. 5 Cir. 4/24/01), 784 So.2d 125, 128. Therefore, this Court has jurisdiction to consider the instant appeal.

## Standards of Review

"A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant." *King v. Town of Clarks*, 21-01897, p. 1 (La. 2/22/22), 345 So.3d 422, 422 (citing La. Code Civ. Proc. art. 966(B)(2)). It is designed to "secure the just, speedy, and inexpensive determination of every action ...." La. Code Civ. Proc. art. 966(A)(2). Motions for summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. Code Civ. Proc. art. 966 (A)(3).

"A genuine issue is one about which reasonable persons could disagree." *King*, 21-01897, pp. 1-2, 345 So.3d at 422 (*Hines v. Garrett*, 04-0806 (La.

7

6/25/04), 876 So.2d 764). The Louisiana Supreme Court further explained that, "[o]nly if reasonable persons could reach only one conclusion is summary judgment on that issue appropriate." *Id.*, 21-01897, p. 2, 345 So.3d at 422. "A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Chatelain v. Fluor Daniel Const. Co.*, 14-1312, p. 3 (La. App. 4 Cir. 11/10/15), 179 So.3d 791, 793.

On a motion for summary judgment, the mover bears the burden of proof. La. Code Civ. Proc. art. 966 (D)(1). However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment," then the mover is not required to "to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* After the motion has been made and properly supported, the burden shifts from the mover to the adverse party. *Id.* When the burden then shifts, the adverse party must produce actual support sufficient to establish the existence of a genuine issue of material fact, or that the mover is not entitled to judgment as a matter of law. *Id.* "Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Knox v. Elite Prot. Sols.*, 21-0419, pp. 9-10 (La. App. 4 Cir. 10/13/21), 366 So.3d 341, 349 (citations omitted).

Appellate courts apply a *de novo* standard of review in examining a district court's ruling on a motion for summary judgment and utilize the same criteria that

govern district court's determination of whether summary judgment is appropriate. *Id*., 21-0419, p. 9, 366 So.3d at 349 (citations omitted).

In the instant matter, Lowe's moved for summary judgment, but Ms. Uhack would bear the burden of proof at trial. Therefore, Lowe's needs to only establish the absence of factual support for one or more elements essential to Ms. Uhack's claim before the burden of proof shifts to her to produce factual support that a genuine issue of material fact exists. Accordingly, we apply the *de novo* standard of review to Ms. Uhack's claims stemming from the district court's denial of her motion for summary judgment.

We find that Ms. Uhack's first two assignments of error are dispositive of this matter as the crux of this appeal involves whether any genuine issues of material fact exist which preclude the grant of summary judgment under the unique facts presented and under the applicable laws.

### Mr. Bickley's Deposition

Ms. Uhack asserts in her first assignment of error that the district court failed to consider Mr. Bickley's deposition, a violation of La. Code Civ. Proc. art. 966(D)(2) and, thereby, prejudiced the evaluation of genuine issues of material fact. She argues that La. Code Civ. Proc. art. 966(D)(2) mandates that *all* documents filed in support of or in opposition to the motion, when no objection is made, shall be considered by district courts.

Ms. Uhack contends that the testimony of Mr. Bickley, who served as Lowe's district asset protection manager, contradicts Lowe's argument that it exercised no control over Off. Garner and maintained only an independent-contractor relationship with Protos. She maintains that Mr. Bickley's deposition testimony reveals that there are genuine issues of material fact precluding the grant

of Lowe's motion for summary judgment. Thus, the district court was unable to completely and fairly assess the factual dispute without considering this evidence, which Ms. Uhack avers was timely submitted on March 7, 2024, as a supplement to her opposition to Lowe's motion. Accordingly, she asserts that this Court should reverse the district court's ruling.

She additionally asserts that the district court erred in denying her motion for new trial because the court again declined to consider Mr. Bickley's testimony. She argues that because Mr. Bickley's deposition was filed a day in advance of the March 8, 2024 summary judgment hearing that the district court should have considered his deposition testimony prior to denying her motion for new trial. We find no error with the district court's judgments, both procedurally and substantively.

Procedurally, the district court was prohibited from considering Ms. Uhack's March 7, 2024 submission of Mr. Bickely's deposition because it was admittedly untimely submitted. Article 966(B)(2) of the Louisiana Code of Civil Procedure provides:

> B. Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
>
> > (2) Except for any document provided for under Subsubparagraph (A)(4)(b) of this Article, any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313(A)(4) not less than fifteen days prior to the hearing on the motion.

In the instant matter, "Subsubparagraph (A)(4)(b)" is inapplicable. Moreover, the district court did not extend the deadline for submission of the

10

opposition, nor did Lowe's agree to her late submission. Ms. Uhack's submission of Mr. Bickely's deposition in support of her timely-filed opposition[4] of Lowe's motion for summary judgment was required to be filed and served not less than 15 days before the hearing on a summary judgment motion. Ms. Uhack did not comply with this deadline. We further note that Mr. Bickley was deposed on March 23, 2023, a year prior to the summary judgment hearing.

"The clear and unambiguous language of Article 966(B)(2) says that, absent the consent of the parties and the court, an opposition *shall* be filed within the fifteen-day deadline established by the article. The word 'shall' is mandatory." *Auricchio v. Harriston*, 20-01167, p. 4 (La. 10/10/21), 332 So.3d 660, 663 (quoting La. Rev. Stat. 1:3). "Summary judgments are intended 'to secure the just, speedy, and inexpensive determination of every action.' Limiting judicial discretion by setting a firm deadline for filing an opposition furthers this end." *Id.* (quoting La. Code Civ. Proc. art. 966(A)(2)). Accordingly, the district court did not err in excluding consideration of Mr. Bickley's deposition testimony in opposition to Lowe's motion for summary judgment.

We further note that Ms. Uhack, in the instant appeal, does not designate that she seeks review of the district court's denial of her motion for new trial. Nevertheless, she incorporates review of the same into the instant assignment of error. We briefly address the denial of her motion for new trial here, finding that the district court did not err in denying her motion for new trial for the same procedural reasons explained above.

---

[4] Ms. Uhack's opposition was filed in November 2022.

Ms. Uhack further asserts that the district court erred in denying her motion for new trial because the district court failed to consider Mr. Bickley's deposition prior to granting Lowe's motion for summary judgment.

An appellate court reviews a ruling on a motion for new trial under an abuse of discretion standard of review. *Jouve v. State Farm Fire & Cas. Co.*, 10-1522, p. 15 (La. App. 4 Cir. 8/17/11), 74 So.3d 220, 229. A new trial shall be granted, upon contradictory motion of any party, in the following cases: (1) when the verdict or judgment appears clearly contrary to the law and the evidence; (2) when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; (3) when the jury was bribed or has behaved improperly so that impartial justice has not been done. La. Code of Civ. Proc. art. 1972. Additionally, a new trial may be granted for discretionary reasons, pursuant to La. Code Civ. Proc. art. 1973, which states that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." A ruling on a motion for new trial is reviewed under an abuse of discretion standard of review. *Sunset Harbour,* 22-0572, p. 9, 356 So.3d at 1173. The mover bears the burden of showing that the mover is entitled to a new trial.

Ms. Uhack contends that she is entitled to a new trial on peremptory grounds because if Mr. Bickley's deposition was considered in opposition to Lowe's motion summary judgment, the motion for summary judgment would have been denied. Additionally, under discretionary grounds, she asserts that good grounds exist for the granting of a new trial because depositions produced with her motion for new trial were omitted from the March 8, 2024 hearing.

We find that the district court did not abuse its discretion as there was no basis to grant Ms. Uhack's motion for new trial on either peremptory or discretionary grounds. Mr. Bickely's deposition was untimely submitted in advance of the motion for summary judgment hearing and Ms. Uhack has not established good grounds existed for the district court to grant her a new trial on a discretionary basis. As noted above, procedurally the district court was precluded from considering Ms. Uhack's untimely deposition submission, pursuant to La Code Civ. Prov. art 966. *Auricchio,* 20-01167, p. 4, 332 So.3d at 663.

Lastly and substantively, the record reflects that the district court had sufficient evidence to conclude that there was no genuine issue of material fact as to whether Off. Garner was a Lowe's employee, as discussed more fully below.

### Lowe's Motion for Summary Judgment

Ms. Uhack asserts that the district court erred in granting summary judgment by ignoring evidence that Lowe's retained sufficient control over its security guards, creating liability for Off. Garner's actions while on duty. As explained above, this Court reviews motions for summary judgment under the *de novo* standard of review, applying the same laws as the district court. We now determine whether Lowe's established that there is no genuine issue of material fact regarding whether Off. Garner was a Lowe's employee.

As previously stated, Lowe's asserts in its motion for summary judgment that Off. Garner was an independent contractor who provided security for Lowe's pursuant to Lowe's agreement with Protos. Lowe's argued that it did not exercise operational control over Off. Garner, and, therefore, it is not vicariously liable to Mr. Uhack for Off. Garner's actions. As mentioned above, Lowe's relies on the precedent of this Court in *Duronslet, supra,* in support of its argument.

13

In *Duronslet*, Michael Duronslet, a Wal-Mart customer, sued Wal-Mart alleging he was injured and arrested by a security guard – an on-duty Orleans Parish Sheriff Office's (OPSO) deputy– while trying to speak with the in-store pharmacist at a New Orleans area store. 22-0019, pp. 1-2, 345 So.3d at 1140. Mr. Duronslet pleaded that the guard was acting under Wal-Mart's direction and control, and, thus, performing duties in the course and scope of his employment when the customer was injured and arrested. *Id.*

Wal-Mart later filed a third-party demand, adding the security company that provided Wal-Mart's security services and retained the OPSO officer, as a defendant. *Id.*, 22-0019, pp. 3-6, 345 So.3d at 1141-45. Wal-Mart pleaded that it contracted with the security company, pursuant to a Security Services Master Agreement and an Addendum thereto, to provide Wal-Mart security and further that the security company was actually the OPSO deputy's employer. *Id.*

Subsequently, Wal-Mart moved for a partial summary judgment asserting that it was not vicariously liable for the OPSO deputy because— pursuant to the Security Services Agreement— the OPSO deputy was an employee of the security company, which contracted directly with the OPSO to retain the OPSO deputy to work Wal-Mart's security detail. *Id.*, 22-0019, pp. 8-10, 345 So.3d at 1144-45. Wal-Mart asserted that the OPSO deputy was its independent contractor. The district court granted Wal-Mart's motion, holding that under the "clear and unambiguous" terms of the security contract as well as the record, the OPSO deputy was not a Wal-Mart employee. *Id.*, 22-0019, p. 10-1, 345 So.3d at 1145. Mr. Duronslet appealed.

The *Duronslet* Court, applying *Hickman v. S.Pac. Transp. Co.*, 262 La. 102, 262 So.2d 385, 390 (1972), reasoned that the OPSO deputy was an

independent contractor because his work was of an independent nature and the guard was permitted to perform his duties without being controlled by Wal-Mart, pursuant to the security agreement in effect between Wal-Mart and the security company it contracted with to provide its security services. *Id.*, 22-0019, pp. 21-8, 345 So.3d at 1150-54. In so holding, this Court explained how to determine whether a worker is an independent contractor:

> There exists "no hard and fast rule" to distinguish between an employee and an independent contractor; rather the distinction entails a factual determination that courts decide on a case-by-case basis. *Pilet*, 2020-0319, p. 9, 312 So.3d at 1161 n.18[5] (quoting *Tate v. Progressive Sec. Ins. Co.*, 2008-0950, p. 9 (La. App. 4 Cir. 1/28/09), 4 So.3d 915, 920). The label "independent contractor" indicates "a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants." *Id.* (quoting *Hickman v. S. Pac. Transp. Co.*, 262 La. 102, 262 So.2d 385, 390 (1972)). As this Court has explained:
>
>> The Louisiana Supreme Court has developed the following factors to help determine whether an individual is an employee or an independent contractor:
>>
>> (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. *Hickman v.*

---

[5] *Pilet v. Pilet Distribs.*, 20-0319 (La. App. 4 Cir. 12/30/20), 312 So.3d 1154.

*Southern Pacific Transport Co.*, 262 La. 102, 262 So.2d 385 (1972).

*Id.*, 20-0319, p. 10, 312 So.3d at 1161 (quoting *Chaisson v. La. Rock Monsters, LLC*, 2013-1423, pp. 3-4 (La. App. 4 Cir. 4/2/14), 140 So.3d 55, 57-58).

*Id.*, 22-0019, pp. 21-8, 345 So.3d at 1150-54

Additionally, this Court reasoned that *Hickman*'s second and third factors "are generally discussed together and refer to the methods used to complete the project, the non-exclusiveness of those methods, and the degree of control exercised by the principal." *Id.*, 22-0019, p. 23-4, 345 So.3d at 1152 (quoting *Simon v. Farm Bureau Ins. Co.*, 19-0278, p. 6 (La. App. 3 Cir. 3/4/20), 297 So.3d 147, 151). Noting that "[t]he 'essence of the employer-employee relationship is the right to control,'" this Court has identified four factors evidencing the right to control: 1) selection and engagement, 2) payment of wages, 3) power of dismissal and 4) power of control.'" *Id.*, 22-0019, p. 23-4, 345 So.3d at 1152 (quoting *Pilet*, 20-0319, p. 10, 312 So.3d at 1161). "'None of the factors alone is determinative' though, and 'the court must consider the totality of the circumstances.'" *Id.*

Finding the *Duronslet* Court's holdings to be applicable on the issue of whether Off. Garner was a Lowe's employee, we apply *Duronslet* to the unique facts presented in the instant matter. Initially, we examine the application of the *Hickman* factors to the instant matter. Our review of the record shows that factors one, four and five are satisfied, as evidenced by the MPSA's terms.

Factor one questions whether there is a valid contract between the parties. In the instant matter, Lowe's and Protos had a valid contract—the MPSA— in place, which Lowe's produced in support of its motion. Section 15.4 of the MPSA provides that Protos is an independent contractor. Furthermore, the MPSA's

"Statement of Work" provision provides that all CLEPs serve as independent contractors.[6] The fourth factor questions whether there is a specific price for the overall undertaking agreed upon. The MPSA's terms include pricing, together with hourly pay rates for security guards, as set forth in Attachment E to the MPSA. The fifth factor questions whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Here, the MPSA, in Article 11, designates that the duration of work is for a specific time period, and further sets forth termination rights and obligations for both parties. Just as in *Duronslet*, the clear and unambiguous terms of the MPSA reveal that the three aforementioned *Hickman* factors are met.

What remains to be determined are how *Hickman* factors two and three apply in this matter, that is to say whether there is a genuine issue of material fact that Lowe's exercised some right to control Off. Gardner. As discussed above, *Hickman* factors two and three involve determining whether there was the right to control an employee. Factor two examines whether "the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it," whereas factor three questions whether "the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered." *Id.*, 22-0019, p. 23-4, 345 So.3d at 1152.

---

[6] The first page of the Guidelines also sets forth that CLEPs "serve as independent contractors employed by a third-party vendor to Lowe's and are not employees of Lowe's."

Lowe's avers that aside from providing the Guidelines, as a general set of its expectations, there is no proof that it exercises any oversight or operational control over Off. Garner.[7] Moreover, Lowe's asserts that CLEPs, like Off. Garner, were given less directives than CSPs because CLEPs are trained law enforcement officers. The testimony of Off. Garner and Lowe's employees, as well as the MPSA and Guidelines, reveal that Off. Garner retained his independence and ability to provide security services in a manner he chose.

Off. Garner testified during his deposition that when working his security details at Lowe's, he was unencumbered by Lowe's restrictions. He explained that despite his knowledge of Lowe's general security protocols, he—as a commissioned officer— had the freedom to decide how to provide security during his details at Lowe's. He further testified that when he arrived at Lowe's for his details, he first reported to Protos, via phone, that he was present prior to calling the NOPD dispatch to inform the NOPD of his location. He related that during his Lowe's details he used his personal vehicle, wore a NOPD uniform and was armed with an NOPD-issued firearm. He further used an NOPD-issued radio to contact dispatch when needed. Off. Garner testified that Protos pays the OPSE, which in turn pays him.

The record shows that Off. Garner had to execute a Lowe's Do's and Don'ts form, which specifically provided:

---

[7] The Second Circuit explains that "[o]perational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way. *McDaniel v. R.J.'s Transportation, L.L.C.,* 53,667, p. 9-10 (La. App. 2 Cir. 1/13/21), 310 So.3d 760, 766 (citations omitted). "A federal court applying Louisiana law defined 'step-by-step process' as a case where a principal substitutes the independent contractor's entire method and manner of operation for one of its own. *Id.* (quoting *Romero v. Mobil Expl.*, 727 F. Supp. 293 (W.D. La. 1989)).

> [d]on't pursue a person suspected of any illegal activity while on or off Lowe's premises. *Note: CLEP Officers may pursue if the personally witness a crime in progress.* [Emphasis added].

Off. Garner explained that, as a CLEP, Lowe's "Do not pursue policy" was inapplicable to him because he is a commissioned officer who has a duty to act when a crime is progress. "If we see something in progress and stuff and we don't take action, that's neglect of duty. . . . The police department pretty much overrules a lot of stuff when we working [sic] these details because we still [sic] an officer." Off. Garner's testimony is consistent with the Note, quoted above, in Lowe's Do's and Don'ts, allowing CLEPs to pursue suspects they personally witness commit a crime.

Lowe's corporate representative, Luke Moeller, testified in his deposition that Lowe's contracted with Protos due to its expertise in providing security personnel and security management. He explained that Lowe's entrusted Protos to "hire, vet competent security guards for us." He further explained that he was aware that Protos did not do backgrounds checks and vet their potential security guards, but he believed the expectation of Protos hiring through the NOPD was that they were hiring a law enforcement officer.

Leionida DeJesus, Lowe's local asset Protection Manager, testified in her deposition that Lowe's was not involved in the day-to-day security functions. She related that Lowe's neither trained the guards nor controlled which guards are assigned to any particular shift. She explained that other than a 15-minute meeting with Off. Garner to review the Guidelines and having him sign the Do's and Don'ts, there was no other training that she provided to him. The security guards are not required to give her logs or incident reports. She was not asked to provide

Lowe's feedback about Protos or NOPD-contracted security guards. The guards did not need her permission to take breaks. She testified that she is not involved with security guards scheduling as well as reporting for and ending their shifts because Protos oversees when guards clock-in and out. She explained that the guards would call-in to Protos from a phone located inside of the Lowe's location. She testified that some communication may occur if illegal activity was suspected, but otherwise there was no contact with the Protos-assigned guards.

Additionally, she explained that she was not tasked with ensuring the security guards were doing their jobs or following the Guidelines. She further testified that Lowe's employees could not discipline or fire guards, who were paid by the NOPD. When an issue arose with a guard who was not performing up to Lowe's expectations, she would relay that concern to Protos.

Off. Garner buttressed Ms. DeJesus' testimony when he explained he could perform his entire shift without communicating with her. He testified that he did not have to report to her, but at times they would either run into each other while he was working or she would enter the Lowe's parking lot to see what guard was working. Moreover, as Ms. DeJesus also explained, Off. Garner testified that he was assigned details through the NOPD's OPSE. Based upon our review of Lowe's motion for summary judgment and supporting evidence, Lowe's established that there is an absence of factual support for the legal elements essential to Ms. Uhack's claims. Thus, the burden shifts to Ms. Uhack to produce actual support sufficient to establish that a genuine issue of material fact exists or that Lowe's is not entitled to a judgment as a matter of law.

Ms. Uhack contends that Mr. Bickley's deposition combined with the surveillance footage she submitted in support of her opposition, establishes that

"Lowe's maintained authority over Off. Garner's actions, dictated security protocols, and authorized his reckless pursuit," resulting in her injuries. Thus, she avers, she carried her burden of proof that a genuine issue of material fact exists as to whether Lowe's is vicariously liable for Off. Garner's actions. We disagree.

As discussed above, Mr. Bickley's deposition testimony was untimely submitted, pursuant to La. Code Civ. Proc. art. 966(B)(2), and, therefore, could not be considered by the district court. Nor do we find the surveillance footage of the incident to be indicative of whether Off. Garner was a Lowe's employee. Accordingly, we find that Ms. Uhack failed to produce actual support sufficient to establish that a genuine issue of material fact exists or that Lowe's is not entitled to a judgment as a matter of law.

The deposition testimony of Off. Garner and Lowe's employees, as well as the terms of the MPSA and the Guidelines, evidences that Lowe's did not have operational control over Off. Garner, rather he retained the autonomy and freedom to provide security services in a manner he chose, as a CLEP and, specifically, as a law enforcement officer. Lowe's showed that Ms. Uhack was unable to satisfy the *Hickman* factors or *Duronslet*'s holdings in establishing that Off. Garner was a Lowe's employee. Because Lowe's carried its burden of proof that there is no genuine issue of material fact as to whether Off. Garner was a Lowe's employee, we find that Lowe's is entitled to summary judgment and further, that the district court did not err in granting its motion for summary judgment.

Having determined that Lowe's is entitled to summary judgment, we pretermit discussion of the remaining assignments of error as this would be tantamount to issuing an advisory opinion from which no practical results can follow. *See Whitney Nat. Bank of New Orleans v. Poydras Ctr. Assocs.*, 468 So.2d

1246, 1248 (La. App. 4th Cir. 1985). Louisiana jurisprudence is clear "that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies." *Cat's Meow, Inc. v. City of New Orleans Through Dep't of Fin.*, 98-0601, p. 8 (La. 10/20/98), 720 So.2d 1186, 1193.

## DECREE

For the foregoing reasons, the district court's March 27, 2024 judgment, granting Lowe's motion for summary judgment and dismissing it from this matter with prejudice, is affirmed.

**AFFIRMED**